UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOUBAR NALBANDIAN,                     )     NO. CV 04-9156-MAN
                                       )
                Plaintiff,             )
                                       )     MEMORANDUM OPINION AND ORDER
        v.                             )
                                       )
MICHAEL J. ASTRUE[1],                  )
Commissioner of the                    )
Social Security Administration,        )
                                       )
                Defendant.             )
_____)

        Plaintiff filed a Complaint on November 10, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income ("SSI").  On December 15, 2004, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636.  The parties filed a Joint Stipulation on August 10, 2005, in which:  the parties set forth their respective arguments regarding Plaintiff's claims; Plaintiff seeks an order reversing the Commissioner's decision; and Defendant requests

---

        [1]    Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he is substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action and, pursuant to 42 U.S.C. § 405(g), no further action need be taken to continue this suit.

that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on February 6, 1997. (Administrative Record ("A.R.") 85-86.)  Plaintiff claimed to have been disabled since January 1, 1980, due to headaches, poor memory, high blood pressure, back pain, fatigue, and heart pain.  (A.R. 14, 85, 91, 254.)  He has past relevant work experience as a shuttle bus driver. (A.R. 15, 128-29.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  (A.R. 72-82.)  On October 5, 1998, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Lawrence D. Wheeler ("ALJ").  (A.R. 55-71.)  On December 10, 1998, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently denied his request for review.  (A.R. 5-7, 14-23.)

Plaintiff sought review of that decision in this Court (Case No. CV 00-05563-MAN).  On March 29, 2002, this Court remanded the case to the ALJ for further proceedings (A.R. 281-96; "2002 Order") on the following three grounds:

First, the Court found that the ALJ improperly failed to render a specific finding regarding Plaintiff's activities of daily living. (A.R. 290-92.)

<u>Second</u>, the Court found that the ALJ improperly relied on Plaintiff's appearance at the hearing to conclude that his testimony was not fully credible.  (A.R. 292-93.)

<u>Third</u>, the Court found that the ALJ improperly disregarded the opinion of Dr. Robert Schatz, stating:

> The ALJ noted that Dr. Schatz assessed plaintiff with functional limitations that support a finding of "light" level residual functional capacity.  (A.R. 20.)  Nevertheless, the ALJ rejected this assessment as "too restrictive," and found that plaintiff has the residual functional capacity to perform work at the more rigorous "medium" level.  (A.R. 21.)  The ALJ justified this finding by pointing to plaintiff's lack of credibility.  However, Dr. Schatz found objective medical evidence of hypertension and he, as well as Dr. Menchaca, a treating physician at BAART/CDP, found objective medical evidence of a prior heart attack in plaintiff's EKG results.  (A.R. 168, 198-200.)  While Dr. Schatz's written evaluation does not specify whether he considered plaintiff's hypertension and prior heart attack in coming to his assessment of "light" RFC, he did clearly note both conditions in his report.  (A.R. 168.)  If the presence of these two conditions influenced Dr. Schatz's assessment, increasing the RFC assessment to "medium" may well reflect an inappropriate disregard for this substantial evidence.

(A.R. 294.)

3

On April 14, 2004, the ALJ held a further administrative hearing. (A.R. 264-80.)  In a September 1, 2004 decision, the ALJ again denied Plaintiff's request for SSI.  (A.R. 254-63.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his September 1, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1990.  (A.R. 262.)  The ALJ found that Plaintiff's impairments, consisting of hypertension and low back pain, are "severe," but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (*Id.*)  The ALJ found Plaintiff's statements concerning his impairments and their impact on his ability to work to be not entirely credible in light of Plaintiff's own description of his activities and lifestyle, the medical treatment he required, the discrepancies between his assertions and the information contained in the record, his demeanor at the hearing, and his assertions regarding his ability to work.  (*Id.*)

The ALJ found that Plaintiff had the residual functional capacity to perform work at the "medium" level.[2]  (A.R. 262.)  Because Plaintiff's residual functional capacity did not preclude him from performing his past work as a shuttle bus driver, the ALJ found that Plaintiff had not been disabled at any time through the date of the decision.  (*Id.*)

---

[2]   "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. Id. at 1041; see also Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Here, Plaintiff alleges two general issues.  <u>First</u>, Plaintiff contends the ALJ erred by finding that Plaintiff had the residual functional capacity to perform his past relevant work.  <u>Second</u>, Plaintiff contends the ALJ failed to proceed to Step Five of the sequential evaluation and consider whether Plaintiff's combination of impairments and his advanced age rendered him disabled.  (Joint Stip. at 5, 16.)

**A.   The ALJ's Finding Regarding Plaintiff's Residual Functional Capacity Is Based On Substantial Evidence.**

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  Social Security Ruling 96-8p.  According to 20 C.F.R. § 416.945(a)(3):

We will assess your residual functional capacity based upon all of the relevant medical and other evidence. . . .  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (See § 416.913.)  We will also consider descriptions and observations of your limitations from your impairments), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

"We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s)."  20 C.F.R. § 416.927(e)(2).

Plaintiff contends that the record does not support the ALJ's findings that he retained the residual functional capacity to perform "medium" work and could return to his past relevant work.[3]  (Joint Stip. at 5.)  Plaintiff further contends that the ALJ's residual functional capacity finding is in error, because the ALJ did not comply with the 2002 Order and thus failed to correct his errors regarding:  his findings with respect to Plaintiff's daily activities; the rejection of Dr. Shatz's report, which limited Plaintiff to "light" work; and his finding based on Plaintiff's demeanor at the hearing.  (Joint Stip. at 5-6.)

In addressing Plaintiff's credibility on remand and setting forth the basis of his finding regarding Plaintiff's residual functional capacity, the ALJ stated:

> [Plaintiff] was able to use public transportation to come to the hearing.  There is also no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair [Plaintiff's] ability to do basic work activities.  All questions asked at the hearing were

---

[3]     Because this argument involves a two-part analysis, the Court first will address whether the ALJ's residual functional capacity finding is supported by substantial evidence in Section A, and then will consider whether the ALJ's finding that Plaintiff could return to his past relevant work is supported by substantial evidence in Section B.

7

answered alertly and appropriately.  When asked why he considered himself disabled, [Plaintiff] cited heart pain, high blood pressure, back pain, constant headaches, fatigue and mental illness.  However, as noted above, there is no basis for a finding that [Plaintiff] is mentally impaired. In addition, once at the hearing, [Plaintiff's] testimony continued to be rife with contradiction and inconsistency. First, regarding his work history, as discussed above, [Plaintiff] alleged an onset date of 1980 yet reported in exhibit 5E that he worked as a shuttle drive through 1990. He then told Dr. Schatz he last worked as a maintenance worker in 1992.  However, in exhibit 10F [Plaintiff] stated he could not remember any work history.  When asked about exhibit 5E [Plaintiff] stated he could not remember any work history.  When asked about exhibit 5E [Plaintiff] said he "maybe" worked through 1990 and provided "I don't know" answers in a hostile manner to other work related questions including the source of $933.00 in earnings in 1995. (Exhibit 3D).  [Plaintiff] was also asked about the statement by his neighbor Isabella Sapzyan in exhibit 3E that he attends school.  He denied attending school in the last 20 years (a rather concrete statement of time considering [Plaintiff's] problems remembering when he last worked) and claimed to not know who Ms. Sapzyan was.  She also noted [Plaintiff] enjoyed playing basketball, reading, and watching t.v.  [Plaintiff] also told Dr. Salanga that he basically has no problems performing the activities of daily living.

In addition, [Plaintiff] was asked about the significant gap in his medical history from 1993 to 1998. In response, [Plaintiff] claimed to have treated with a "personal doctor." However, he could not provide a full name and submitted no medical evidence from this alleged source. In addition, as discussed above, [Plaintiff] appeared to be deliberately uncooperative and vague during the various consultative examinations he attended. Nevertheless, he displayed no symptoms indicative of any psychiatric disturbance and his performance during Dr. Schatz' exam also failed to establish any significant objective physical impairments other than hypertension and some reduced back motion. Finally, despite [Plaintiff's] allegations of numerous disabling impairments, records from the various non-consultative medical sources contain no complaints of headaches, back pain, fatigue, or mental impairments. Although Dr. Schatz assessed [Plaintiff] with a "light" level residual functional capacity, the undersigned finds that, in light of [Plaintiff's] inconsistencies and the lack of other medical evidence or complaints of back pain by [Plaintiff], Dr. Schatz' assessment is too restrictive. In that regard, it should also be emphasized that [Plaintiff] was consultatively examined by Mehran Sourehnissani, M.D., a board-certified internist, in September 2003, and that, despite [Plaintiff's] allegations of a 15-year history of headaches involving the entire head, a 35-year history of low back pain radiating to his lower extremities, and a 20-year history of heart problems, Dr. Sourehnissani assessed that [Plaintiff] would

9

be limited only to lifting/carrying 50 pounds occasionally
and 25 pounds frequently with sitting, standing, and walking
up to 6 hours each in an 8-hour workday.  He further assessed
that [Plaintiff] would have no additional postural,
manipulative, or visual/communicative limitations upon his
ability to perform basic work-related activities (Exhibit
9F).

(A.R. 260-61.)

The ALJ then noted that, because the degree of disability Plaintiff
claimed rested primarily on his subjective pain symptoms,[4] Plaintiff's
credibility, was an issue.  (A.R. 261.)  The ALJ noted that, based on
Plaintiff's exaggeration of his symptoms, an examining psychiatrist had
"diagnosed malingering as the primary diagnosis." (*Id.*)  The ALJ then
noted the following additional discrepancies between Plaintiff's
assertions and the evidence of record:

    Specifically, [Plaintiff] told Sr. Salanga [a
    consultative psychiatrist] that he is able to shop, prepare
    meals, use public transportation, pay bills, maintain
    residence, and care for grooming/hygiene, he spends his days
    sleeping or walking around the house, he has no friends, and
    does not have any family members living, he is able to
    understand simple and written/oral instructions, and he is

---

    [4]    The ALJ correctly acknowledged that Plaintiff "does have a
medically determined impairment that could be expected to produce some
degree of pain." (A.R. 261.)

able to sustain focus (Exhibit 1F/2, with special emphasis on the allegation that he has no family members living compared with Exhibits 2F and 8F); [Plaintiff] told Dr. Gong [a consultative psychologist] in February 1998 that he gets up, eats breakfast, lays down, talks with neighbors, watches television, takes care of his personal hygiene, cooks and cares for himself, and that his sister comes to visit and cook/shop for him (in direct contrast to his allegation to Dr. Salanga that he has no family members living; see Exhibit 2F/3); he described his activities of daily living to Dr. Dupee [a consultative psychiatrist] in August 2003 as including shopping, cooking, watching television, sleeping, socializing with his sister (Exhibit 8F/3); and a third party described [Plaintiff's] activities as including playing basketball, reading, and watching television. She also described [Plaintiff] as having a driver's license and driving a car (Exhibit 3E). [Plaintiff] testified that he has a driver's license, but that he last drove 10 or more years ago. It doesn't make sense that [Plaintiff] would renew his driver's license, however, if he never uses it. Moreover, a third party has indicated that [Plaintiff] has driven within the last 10 years (see Exhibit 3E).

(A.R. 261.)

In his ultimate findings at the end of his decision, the ALJ made the following specific finding with respect to the credibility of Plaintiff's testimony regarding his claimed symptoms and limitations:

[Plaintiff's] statements concerning his impairments and their impact on his ability to work are not entirely credible in light of claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between [Plaintiff's] assertions and information contained in the documentary reports, [Plaintiff's] demeanor at the hearing, the medical history and [Plaintiff's] assertions concerning his ability to work.

(A.R. 262; *see also* A.R. 261.)

### 1. **The ALJ's Consideration Of Plaintiff's Claimed Symptoms And Limitations Was Proper.**

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). In rendering a credibility evaluation, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284. When an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>,

933 F.2d 735, 738 (9th Cir. 1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

In rendering his credibility determination, the ALJ was entitled to, and did, cite significant and specific internal inconsistencies in Plaintiff's allegations, statements, and testimony, the inconsistencies between his allegations and the evidence of record regarding his daily activities, and the testimony by Plaintiff that appeared to be less than candid -- all of which appropriately could be considered to undermine his allegations regarding his limitations and symptoms. See Light, 119 F.3d at 792 (an ALJ may disbelieve a claimant's alleged limitations when the claimant's testimony regarding his daily activities and the nature, effect, or severity of his symptoms are inconsistent). For instance, the ALJ cited Plaintiff's testimony that he did not know the identity of his neighbor, Ms. Sapszyan (A.R. 66), even though she completed a March 2, 1997 Daily Activities Report on his behalf in connection with his benefits application (A.R. 116-21). The ALJ noted several discrepancies between Plaintiff's reported daily activities and his allegations, including:  the rigorous physical activity of playing basketball (A.R. 118), an activity inconsistent with Plaintiff's allegations of disabling pain; driving (id.), in contrast to Plaintiff's testimony that he has not drive for ten years or more (A.R. 276); and attending school (A.R. 116), in contrast to Plaintiff's testimony that he has not attended school for 20 years (A.R. 65-67). See, e.g., Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993)(the ALJ properly rejected the claimant's allegation that back pain was

disabling, when claimant performed housecleaning and gardening, attended school, and only occasionally took pain medication); Fair, 885 F.2d at 603 ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

The ALJ also noted Plaintiff's inconsistent statements regarding the existence of living family members and regarding his work history and disability onset date.  (A.R. 260-61.)  As the ALJ noted, Plaintiff reacted with evasive and hostile answers when questioned about his work history.  (See A.R. 61-62, in which Plaintiff initially professed not to remember the last time he had worked and responded with sarcasm ("Maybe 500 years ago, I don't know") and hostility ("I don't care") in response to the ALJ's repeated questions on this issue.)

Additionally, the ALJ appropriately took note of the diagnosis of "malingering" made by examining psychiatrist Dr. Suzanne Dupee.  (See A.R. 328-31, in which Dr. Dupee noted that:  Plaintiff was "a very difficult and somewhat uncooperative historian" who periodically "change[d] his story"; he claimed there are "six" quarters in a dollar, a "dog has five legs," and an orange is square; he claimed not to know his mother's name, the specific number of his brothers and sisters, or the capital of Armenia; he claimed not to know the month and date of his birth, even though he had filled out a form containing this information; and his affect fluctuated depending on the situation, for although he was uncooperative and evasive with the psychiatrist, he acted

differently in the waiting room, including helping a disabled patient from the room into the office.)  *See* <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003)(an ALJ may reject a claimant's testimony upon: "(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so").

Furthermore, in compliance with the 2002 Order, the ALJ specifically found that Plaintiff's "demeanor at the hearing" and his "assertions concerning his ability to work" undermined his credibility. (A.R. 262.)  The ALJ supported this finding by citing examples of Plaintiff's conduct at the hearing, such as providing evasive and self-serving responses.  For example, the ALJ noted that, although Plaintiff claimed to have sought treatment from a personal doctor for the time period from 1993 to 1998 (A.R. 67-68), he was vague about the details of that treatment, and the record failed to support his assertion (*Id.*) (*See also* A.R. 267-68 -- statements by Plaintiff's counsel at the April 14, 2004 hearing that she could only identify 1998 records from L.A. County/USC during this time period; A.R. 185-229 -- medical records submitted by Plaintiff's counsel from L.A. County/USC stated to cover "9/88 - 7/98," but actually contained no records from 1993 to 1997.) *See also* <u>Flaten v. Sec'y. of Health & Hum. Serv.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995)(the "ALJ . . . may disregard unsupported, self-serving statements"); <u>Taylor v. Heckler</u>, 765 F.2d 872, 876 (9th Cir. 1985)(unsupported, self-serving statements regarding symptoms and limitations are properly rejected).

The ALJ utilized ordinary techniques of credibility evaluation in this case, in accordance with the above-described standards. *See, e.g.,*

<u>Smolen</u>, 80 F.3d at 1284; <u>Fair v. Bowen</u>, 885 F.2d 597, 605 n.5 (9th Cir. 1989) Moreover, the ALJ's credibility finding adequately addresses the concerns expressed by the Court in its 2002 Order.   Accordingly, Plaintiff's contention that the ALJ improperly rejected his claimed symptoms and limitations in rendering the residual functional capacity finding is unpersuasive and, therefore, is rejected.

   **2.   <u>The ALJ's Consideration Of The Opinions Provided By The Examining Physicians Was Proper</u>.**

   The opinions of non-treating physicians -- examining physicians and non-examining, testifying medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported. *See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan</u>, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").

   On February 24, 1998, Dr. Schatz, an internal medicine physician and cardiologist who examined Plaintiff at the request of the Commissioner, noted Plaintiff's alleged symptoms of:   chest pain (associated with shortness of breath), sweat, palpitation, and dizziness; difficulty sleeping through the night; daily "brain and head pain"; legs which are "no good"; weakness in his hands; and low back pain. (A.R. 165.) Aside from the history provided by Plaintiff and a March 1997 psychiatric evaluation, Dr. Schatz noted that he had "very

16

little information [about Plaintiff] in the short stack of records"
provided to him, "which basically consist of administrative forms."
(A.R. 166.)   Dr. Schatz further noted that Plaintiff was "rather
unreliable" and that his alleged symptoms lacked any apparent basis,
stating: "The reason for his constant shortness of breath is not clear.
His lungs seem to be clear today.   His blood pressure is mildly
elevated.  Regarding his long-lasting chest pain, this sounds atypical."
(A.R. 168.)    In conclusion, Dr. Schatz noted that "[f]unction[al]
capacity evaluation was difficult because of [Plaintiff's] rather
strange and bizarre presentation." (A.R. 169.)   Notwithstanding the
problems he noted in evaluating Plaintiff's residual functional
capacity, in a concurrent Medical Assessment Of Ability To Do Work-
Related Activities, Dr. Schatz noted that Plaintiff had the ability to
perform work at the "light" level; could sit, stand, and/or walk for
about six hours in an eight-hour day; had an unlimited capacity for
pushing and pulling; and should avoid temperature extremes. (A.R. 172-
74.)

On September 8, 2003, Dr. Sourehnissani, an internal medicine
physician who examined Plaintiff at the request of the Commissioner,
found that Plaintiff:  had a regular heart rate and rhythm with no
audible murmur or click; a blood pressure of 140/80; and normal ranges
of motion in his back and extremities, except for "[p]aravertebral
muscle tenderness with mild spasm" in his lumbar spine. (A.R. 338-41.)
She reviewed background information regarding Plaintiff's condition,
including: June 1998 treatment records from L.A. County/USC, indicating
that Plaintiff had been diagnosed with stable angina and given
nitroglycerin, and he had high blood pressure treated with Atenolol; and

17

1   Dr. Schatz's February 24, 1998 report, noting an EKG consistent with an
2   old inferior infarction. (A.R. 340.) Based on her examination and
3   review of the evidence, Dr. Sourehnissani found that "[Plaintiff's]
4   functional status is limited to lift[ing] and carry[ing] 50 lbs.
5   occasionally and 25 lbs. frequently," and he "can stand and walk up to
6   6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday."
7   (A.R. 341.)[5]

8

9       Plaintiff contends that the ALJ failed to properly comply with the
10  2002 Order, which required him to evaluate the effects of hypertension
11  and a prior heart attack in finding that Plaintiff could perform
12  "medium" work. In the 2002 Order, the Court specifically noted that the
13  ALJ improperly rejected Dr. Schatz's assessment as "too restrictive"
14  based solely on Plaintiff's lack of credibility. (A.R. 294.)

15

16      Prior to remand, Dr. Schatz's assessment was the only medical
17  evidence of record that set forth Plaintiff's physical limitations. Put
18  otherwise, Dr. Sourehnissani's 2003 opinion obviously was not before the
19  Court when the 2002 Order issued. The ALJ did not err, or violate the
20  2002 Order, in adopting the residual functional capacity rendered by Dr.
21  Sourehnissani following the remand of this case. Although both Dr.
22  Schatz and Dr. Sourehnissani examined Plaintiff, only Dr. Sourehnissani
23  was provided background information on Plaintiff's condition, including
24  treatment records, as well as Dr. Schatz's report. *See* 20 C.F.R. §§

25

26      [5]   This opinion equates to a finding that Plaintiff could perform
27  "medium" work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c). (*See also*
    A.R. 342-44, the "Medical Source Statement" prepared by Dr.
28  Sourehnissani, opining that Plaintiff retains the residual functional
    capacity to perform "medium" work.

404.1517, 416.917 ("[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition").   Indeed, Dr. Schatz specifically noted the difficulty he had in assessing Plaintiff's residual functional capacity because of Plaintiff's "unreliability" and the lack of medical bases for his complaints (A.R. 169.)   In rendering his residual functional capacity assessment, when asked to set forth the medical findings supporting the postural limitations he had assessed, Dr. Schatz cited only to an "old" EKG.[6]  (A.R. 172-74.)

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).   Moreover, where there is a conflict in the medical opinions, the ALJ is entitled to resolve the conflict. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004)(when there are conflicting medical opinions, the ALJ must resolve the conflict); Thomas, 278 F.3d at 956-57 (same); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(same).   The ALJ did so appropriately in this case.   Substantial evidence, therefore, supports the ALJ's finding regarding Plaintiff's physical limitations.

Accordingly, because Plaintiff's arguments regarding the alleged errors in the ALJ's residual functional capacity finding are unavailing and that finding is supported by substantial evidence, it is affirmed.

---

[6]    In his February 24, 1998 opinion, Dr. Schatz found that Plaintiff's mobility was "adequate," with "somewhat limited back movement without significant pain." (A.R. 168.)

**B.** **The ALJ's Finding That Plaintiff Can Perform His Past Relevant Work As A Driver Is Affirmed**.

In determining whether a claimant can perform his past relevant work, an ALJ must consider whether a claimant can return to his previous job or his job as it is generally performed in the national economy. Orteza, 50 F.3d at 751 ("The ALJ's findings that Orteza could perform 'light work' as a file clerk and that such work is available, legally supports the Secretary's determination that Orteza is not disabled, even if Orteza could not return to the specific job he had previously held because of the unusually heavy bending and lifting required there.")(citations omitted); 20 C.F.R. § 404.1520(e) (claimant not disabled if able to perform same type of work done in past).

"The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" Social Security Ruling 82-62, 1982 WL 31386, *3. See also Social Security Ruling 82-61, 1982 WL 31387, **1-2 (setting forth three possible tests for determining whether a claimant can perform his or her past relevant work:  1) whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job; 2) whether the claimant retains the capacity to perform the particular functional demands and job duties particular to an individual job as he or she actually performed it; and 3) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers in the

national economy).  A claimant has the burden of proving that he cannot return to his former type of work, not just his particular job.  *See* Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986).

In finding that Plaintiff could perform his past relevant work, the ALJ explained:

> [The] undersigned finds that [Plaintiff] retains the residual functional capacity to perform the exertional demands of medium work, or work which requires maximum lifting of 50 pounds and frequent lifting of up to 25 pounds (20 C.F.R. § 416.967).  The evidence supports a finding that he is not able to lift and carry more than 50 pounds or more than 25 pounds on a regular basis.  [Plaintiff] has no significant non-exertional limitations that narrow the range of work he can perform.

> In his former job as [a] shuttle bus driver, [Plaintiff] was not required to lift more than 50 pounds as per [Plaintiff's] own description of his past work in exhibit 5E and the Dictionary of Occupational Titles.  [Plaintiff] is still capable of driving, relating to others in an appropriate manner, and maintaining an adequate level of concentration, persistence, and pace.  Because [Plaintiff's] past work did not require the performance of work activities precluded by his medically determinable impairments, he is able to return to the type of work he performed in the past.

(A.R. 261-62.)

Plaintiff contends that the ALJ erred by finding that he could return to his past relevant work.  Plaintiff contends that the ALJ did not consider fully and adequately whether Plaintiff's physical and mental limitations precluded him from performing the tasks involved in his past relevant work.

As discussed above in Section A, the ALJ's finding that Plaintiff retains the residual functional capacity to perform "medium" work is supported by substantial evidence.  In determining how a job is generally performed, it is well-recognized that the Dictionary of Occupational Titles ("DOT") is the "best source" for such information. *See* Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  According to the DOT, Plaintiff's past relevant work as a shuttle bus driver requires work at the "medium" level. *See* DOT 913.663-018.  The ALJ's finding that Plaintiff is capable of driving is supported by substantial evidence for the reasons set forth in Section A.  Moreover, the ALJ acknowledged Plaintiff's description of his past relevant work (A.R. 127-31, 261) and correctly concluded that, given that description, Plaintiff remains capable of performing his past relevant work in view of his retention of the capacity for "medium" work.

The ALJ fully met his duties with respect to the Step Four determination that Plaintiff can perform his past relevant work, by comparing Petitioner's limitations at the "medium" work level with the demands of his past relevant work as set forth in the DOT.  Plaintiff's contention that the ALJ had a duty, at this juncture, to set forth more

detailed findings misapprehends the law.  Because the ALJ had rendered a proper residual functional capacity finding and further determined that someone with that residual functional capacity could perform the demands of Plaintiff's past relevant work, it was Plaintiff's burden to prove that he could not return to his past relevant work; he did not carry that burden.  *See, e.g.*, <u>Matthews</u>, 10 F.3d at 681 (testimony from a vocational expert to consider more fully whether the claimant could return to his previous job was not required, because the claimant failed to carry his burden in showing that he was unable to return to his previous job).[7]

Plaintiff has not established that the ALJ committed any error in determining that Plaintiff can perform his past relevant work.  In view of this determination, Plaintiff's additional arguments regarding asserted ALJ error by failing to proceed to Step Five of the sequential analysis (Joint Stip. at 14-18) are mooted and rejected.

For all of the foregoing reasons, the Court finds that the Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence.

---

[7]    The authorities on which Plaintiff relies are unavailing.  In <u>Dealmeida v. Bowen</u>, 699 F. Supp. 806, 807 (N.D. Cal. 1988), the Court held that the ALJ's finding that the claimant could perform his past relevant work as a maintenance mechanic was not supported adequately, because no information about the claimant's past relevant work could be deduced from the record and the DOT's definition of the job cited by the ALJ required physical demands in excess the claimant's capabilities. This plainly did not occur in this case.  <u>Sivilay v. Apfel</u>, 143 F.3d 1298, 1299 (9th Cir. 1998), is a two-sentence reversal in which the Ninth Circuit simply directed the ALJ "to investigate fully the demands of the applicant's past relevant work and compare that to his" residual functional capacity, with no explanation of how the ALJ had failed to do so.  The decision provides no basis for concluding that the ALJ failed to meet his duty in this case.

Therefore, neither reversal of the ALJ's decision nor remand is warranted.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner, consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 27, 2007

_____
/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

24